BOLDMAN *v.* LENG'S ESTATE.

1. CONTRACTS—TERMINATION—COMPENSATION FOR SERVICES.
    Where a demented person was cared for by plaintiff under
    a contract to care for her for one dollar per day till a week
    after notice of a refusal to keep her longer at such rate,.
    plaintiff was entitled to a reasonable compensation for keep-
    ing the ward after terminating the contract by notice.

2. SAME—INSTRUCTIONS.
    Where, in an action for caring for a ward, the evidence
    showed a contract with the guardian by which the guardian
    was to be given a week's notice if plaintiff should decide not
    to keep the ward longer at an agreed price, it was error to
    instruct the jury that a notification by plaintiff that he
    did not feel that he was able to keep the ward longer at such
    price was not equivalent to a direct notification that he
    would not continue to keep the ward for such price.

3. TRIAL—INSTRUCTIONS—HARMLESS ERROR.
    Appellant cannot complain of an inconsistency in the charge
    of the court due to the giving of his own erroneous requests.

Error to Wayne; Donovan, J. Submitted April 19,
1901. Decided May 21, 1901.

George Boldman presented a claim against the estate of
Susan Leng, deceased, for services rendered. The claim
was disallowed by the commissioners, and claimant ap-
pealed to the circuit court. From a judgment for claim-
ant, the estate brings error. Affirmed.

*Henry M. Cheever,* for appellant.

*Walter Barlow,* for appellee.

LONG, J. This is an appeal from the commissioners on
claims in the estate of Susan Leng disallowing an account.
In the circuit court the claimant had judgment before the
court and jury for $372.45. Defendant estate appeals.
The only errors assigned relate to the charge of the court.

The claimant filed a bill of particulars of his claim before the commissioners, as follows:

1899.

| | |
|---|---|
| March 30th. To moving goods of deceased to my house | $2 00 |
| To board and care of deceased by myself and family from March 30 to April 12, 1899, 14 days | 14 00 |
| To board and care of deceased from April 12 to July 5, 84 days | 420 00 |
| To preparing body for burial, and care of body for 4 days before funeral | 50 00 |
| To storage of furniture, bedding, trunks, clothing, etc., of deceased for 20 weeks after death | 20 00 |
| To board and meals furnished relatives and friends of deceased after her death up to time of funeral | 15 50 |
| To washing bedding and clothing of deceased after death | 5 00 |
| | $526 50 |

Cr.

| | |
|---|---|
| By cash | 144 05 |
| Balance due | $382 45 |

It appears that the deceased, Mrs. Leng, was about 80 years of age, and had been demented several months before she was taken to the house of claimant. Dr. Jenks had been appointed her guardian by the probate court. The deceased was possessed of some considerable money, and two or three days before she was taken to claimant's house her guardian had seen Mr. Boldman about taking care of her. The controversy in this case arises largely over the claimed contract for taking care of her.

Mrs. Boldman was called as a witness for the claimant, and testified in reference to the contract:

"I was to take her for a dollar a day, and if, under any circumstances, I found I could not keep her, I was to give him [Dr. Jenks] one week's notice to remove her to some other place. He also said, in making the bargain, if she lived but a little while the judge of probate would pay the person who took care of her, and would pay them well."

She then testified, substantially, that at first she took the deceased at a dollar a day, and, when she found that

she did not want to continue at that rate, she was to give the guardian notice that she could not continue any longer; that, when Mrs. Leng had been at her house about two weeks, she told Dr. Jenks she could not take her any longer for a dollar a day, but that he wanted her to keep her longer, and said, "You will get your pay all right."

Dr. Jenks testified that the bargain was for one dollar a day. He was then asked:

"*Q.* Until such time as they could not keep her at that price?

"*A.* Notify me and give me a week's time.

"*Q.* And that notice came after she had been there about two weeks?

"*A.* No, sir; never gave me notice.

"*Q.* But Mrs. Boldman said something about keeping her at the expiration of two weeks?

"*A.* Two weeks, or such a matter.

"*Q.* And then what did she say?

"*A.* She said she did not have enough.

"*Q.* Now, you say she told you she could not keep the old lady any longer at that price?

"*A.* No, sir; I did not say so.

"*Q.* What did she say?

"*A.* Why, she did not feel as though she could keep the old lady. She felt as though she ought to have more.

"*Q.* That is what she told you?

"*A.* Yes, sir. * * * Certainly, she told me that; that is what she did tell me.

"*Q.* What did you say?

"*A.* I said, whenever she felt she could not keep the old lady according to contract, give me a week's notice; let me know, and I would see that she got more, or I would get her into another place."

We think it thus appears that the notice was given, as agreed upon, that claimant would not keep the old lady at the one dollar a day. Mrs. Leng remained there 84 days after that time, and the inquiry in the case was properly made as to the value of the services during that time. In the absence of any new rate being agreed upon, the law would imply a promise to pay what the services were reasonably worth. *Ward* v. *Warner*, 8 Mich. 519.

Testimony was given as to the character of the services rendered. The daughter of Mrs. Boldman testified that the deceased required the constant attendance of Mr. and Mrs. Boldman, Mrs. Boldman's mother, and herself night and day, and that the care was worth for the 84 days five dollars per day. The witness also testified that the value of the other services and the board of the relatives and storage of the furniture were worth what was charged in the bill. Mrs. Savage, a witness called by the claimant, testified that the deceased was demented; that she had bowel trouble, and relieved the calls of nature anywhere in the house; and that she required constant watching and aid.

The defendant estate claims:

1. That but one contract was made, and that was for one dollar per day. We think there was some evidence tending to show that that contract was only for the 14 days which is charged in the bill at one dollar a day. As to the further services, there was some testimony showing that the price was not agreed upon, but that the guardian left Mrs. Leng there, agreeing that the claimant should be well paid.

2. It is contended that the verdict is not sustained by the evidence. As we have already said, there was some evidence upon which the jury had a right to pass in determining the question as to the value of the services.

3. The principal claim is that the charge of the court was inconsistent and misleading, and therefore erroneous. Counsel for the estate presented seven requests to charge, all of which were given, as follows:

"1. It is undisputed that the contract was with appellant to care for Mrs. Leng at one dollar a day; that is, the two weeks is certainly undisputed.

"2. If you believe that Mrs. Boldman notified Dr. Jenks, 14 days after Mrs. Leng went to Boldman's house, that she did not feel that she could keep Mrs. Leng longer for one dollar a day, that is not equivalent to a direct notification that she would not keep her at that price.

"3. If you believe that when Mrs. Boldman said to Dr.

Jenks, the guardian, that she did not think she ought to keep Mrs. Leng for one dollar a day, and that he said to her, 'Whenever you feel that you cannot keep her, give me a week's notice, and I will remove her,' and if you find no such peremptory notice was given, then the appellant can only recover at the rate of a dollar a day.

"4. If the jury find that the appellant kept Mrs. Leng until her death without any notice to the guardian that the Boldmans would not keep her for a dollar a day, then they can only recover for keeping and care one dollar per day for the entire time until her death.

"5. It is immaterial why the executor took Mrs. Leng to Mrs. Boldman's.

"6. The guardian admits that, for the last 20 days of Mrs. Leng's life, the Boldmans were entitled to two dollars a day, and that he paid them after Mrs. Leng's death more than a dollar, and that that was the reason, and not because he had made any new bargain; that is, for the reason that it was worth more.

"7. In estimating the amount which should be paid for laying out the body and caring for it for four days, it is for you to take into account that the mother of Mrs. Boldman has already received $10 for her services."

The court thereupon charged the jury, in its general charge, as follows:

"A word or two more, so that the theory may be clearly understood. It is conceded in this case, to lessen the controversy somewhat, that the care and laying out was well attended to. The care, board, keep, laying out, and general nursing is not in question. That the body was nicely laid out, that it had been a hard task to care for the old lady's person, that the woman was demented, and needed night and day attention, is not denied. To quote Dr. Jenks on the question of contract, 'I was to have a week's notice if she could not keep her;' but he said Mrs. Boldman would not say·that she would not keep her. In effect, she said she wanted more. That question came up that she wanted more. Now; how much was just, was right, under the circumstances, is not a question for the court. That has come very near to your families often. It has to mine, three times within the last year. I would feel unable, if I should try, to talk to a jury upon the question of care in the last illness of a grown person, especially of that care when they had to be taken as

children,—nursed as a child, handled as a child, even when they are heavy, grown people. I will not trust myself on that subject, but confine myself to this: The theory of the claimant here is that the care was extra, and that she complained to Dr. Jenks and insisted on more, and, as I remember the words, — but you must be the ones to remember that,—but that he said at one time, 'The court will see that you are paid,' or something of that kind. The court— In her way of putting it, that, if she wanted any more, she must apply to the court. You have heard the way she placed it before you. It is not necessary to repeat it. And then you are to take into consideration that if they did not make a contract after the two weeks, say, and left it open, then the law makes a contract for them. In the absence of a contract, when neither party makes a contract, but there is something done for the advantage of the other, the law raises what is known as an 'implied contract,'—the worth and value. Now you know enough about the case. Take the testimony as you have heard it, the surroundings and the circumstances, place your good judgment back of it,—your trained judgment,—and do justice between the parties."

Counsel for the estate claims that the charge was inconsistent and misleading. We think it may be admitted that the charge, taken in connection with the requests to charge which counsel for the estate asked to be given, and which were given, is somewhat inconsistent; but the estate is not harmed by it. Many of the requests asked and given should not have been given. For instance, the second request given states that, if Mrs. Boldman notified the guardian, 14 days after Mrs. Leng went to her house, that she did not feel that she could keep her longer for a dollar a day, that would not be equivalent to a direct notification that she would not keep her at that price. This stated the law more favorably to the estate than it was entitled to. The testimony shows that it was arranged between Dr. Jenks and the Boldmans that, if they found they could not keep Mrs. Leng for one dollar a day, they were to give one week's notice of that fact. They claim they did give that notice, and that Dr. Jenks did not take her away. This request, therefore, should not have been

given. We find nothing in the general charge calling for criticism.

We think there is no error in the record of which the estate can complain.

The judgment must be affirmed.

The other Justices concurred.